**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
                                        :
NEW JERSEY THOROUGHBRED                 :   CIVIL ACTION NO. 08-613 (MLC)
HORSEMEN'S ASSOCIATION,                 :
INC., et al.,                           :       O P I N I O N
                                        :
      Plaintiffs,                       :
                                        :
      v.                                :
                                        :
THE ALPEN HOUSE U.L.C.,                 :
                                        :
      Defendant.                        :
                                        :
```

**THE PLAINTIFFS**, New Jersey Thoroughbred Horsemen's Association, Inc. ("NJTHA"), ELR Corporation, Deckert Enterprises LLP #2, and Timothy Hills (collectively, "Named Plaintiffs"), bring this action against the defendant, The Alpen House U.L.C., trading as Stronach Stables ("Alpen House"). (Dkt. entry no. 52, Second Am. Compl.) Named Plaintiffs raise claims to recover damages for strict liability and negligence. (Id. at ¶¶ 22-27.)

**NAMED PLAINTIFFS** allege that Alpen House owned thoroughbred horses infected by Equine Herpes Virus-Type 1 ("EHV"). (Id. at ¶¶ 9, 11.) They further allege that Alpen House transported these horses from its facility in Ontario, Canada to the stables at the Monmouth Park Racetrack ("Monmouth Park"), where EHV spread to other horses ("the EHV outbreak"). (See id. at ¶¶ 10-12.) As a result, the New Jersey Department of Agriculture, Division of Animal Health, on October 26, 2006, took measures to

limit the spread of EHV, including quarantining horses stabled at Monmouth Park.  (Id. at ¶ 13.)  Named Plaintiffs allege that such procedures caused "a major disruption" to the operations of thoroughbred horse owners and New Jersey-licensed thoroughbred horse trainers, and thus seek damages.  (Id. at ¶¶ 14-15.)

**NAMED PLAINTIFFS** now move to certify a class pursuant to Federal Rule of Civil Procedure ("Rule") 23.  (Dkt. entry no. 57, Mot.)  To certify the class, Named Plaintiffs must show by a preponderance of the evidence that they satisfy both the conjunctive requirements of Rule 23(a) and at least one of the disjunctive requirements of Rule 23(b). Fed.R.Civ.P. 23; In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 320 (3d Cir. 2008) ("a class may not be certified without a finding that each Rule 23 requirement is met.").

**RULE 23(a)** requires a showing that: (1) the class is so numerous that joinder of all members is impracticable; (2) the class members share at least one common question of law or fact; (3) Named Plaintiffs' claims are typical of the proposed class members' claims; and (4) Named Plaintiffs will fairly and adequately protect the class members' interests.  Fed.R.Civ.P. 23(a); Hydrogen Peroxide Antitrust Litig., 552 F.3d at 320 (noting burden of proof).  As demonstrated below, Named Plaintiffs have satisfied each of Rule 23(a)'s requirements.

2

**NAMED PLAINTIFFS** have satisfied the first element of Rule 23(a), numerosity, by showing that the proposed class includes at least forty-one members.  See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001) ("generally[,] if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of the class action rule has been met.").  Named Plaintiffs have described the proposed class as consisting "of those thoroughbred owners and thoroughbred trainers licensed as such by the State of New Jersey who sustained damages" as a result of the EHV outbreak.  (Second Am. Compl. at ¶ 16.)  This class may include as many as 407 plaintiffs.  (See dkt. entry no. 57-26, 2006 New Jersey Racing Commission Annual and Statistical Report (detailing revenue generated from 407 licenses issued by the State of New Jersey in 2006).)

**NAMED PLAINTIFFS** have also satisfied the second element of Rule 23(a), commonality, by demonstrating that "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  See Johnston v. HBO Film Mgmt., 265 F.3d 178, 184 (3d Cir. 2001); Baby Neal ex rel. Kanter v. Casey, 43 F.3d 48, 56 (3d Cir. 1994).  "Because the [commonality] requirement may be satisfied by a single common issue, it is easily met[.]"  Baby Neal, 43 F.3d at 56.  "Furthermore, class members can assert such a single common complaint even if they have not all suffered actual injury;

3

demonstrating that all class members are <u>subject</u> to the same harm will suffice." <u>Id.</u> (emphasis in original). Inasmuch as Named Plaintiffs have alleged that Alpen House transported and stabled EHV-infected horses at Monmouth Park, Named Plaintiffs have raised issues common to all members of the proposed class; such issues, which would tend to show liability in a negligence action, lie at the heart of all class members' potential claims.

**NAMED PLAINTIFFS** have also satisfied the third element of Rule 23(a), typicality. In assessing typicality, the Court must examine three issues, <u>i.e.</u>, whether: (1) the claims of the class representative are generally similar to those of the proposed class, both in terms of the legal theory advanced and the facts underlying that theory; (2) the class representative is subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative are sufficiently aligned with those of the class. <u>In re Schering Plough Corp. ERISA Litig.</u>, 589 F.3d 585, 599 (3d Cir. 2009). To the extent that these issues relate to the merits of the action, the Court must examine the merits. <u>See</u> <u>Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d at 320.[1]

---

[1] Inasmuch as the Court now considers the merits of the Named Plaintiff's action, such consideration pertains only to the resolution of the Motion. The ultimate factfinder, whether judge or jury, must still reach a determination on those issues. <u>Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d at 320 n.22.

**NAMED PLAINTIFFS** satisfy the first of these issues because their claims, like the proposed class members' claims, stem from allegations that Alpen House caused the EHV outbreak.  See Baby Neal, 43 F.3d at 56; see also Smith v. Suprema Specialties, Inc., No. 02-168, 2007 WL 1217980, at *5 (D.N.J. Apr. 23, 2007) ("Typicality is usually satisfied where the class representatives['] claims arise 'from the same event or practice or course of conduct' as the other class members.").

**NAMED PLAINTIFFS** also satisfy the second and third issues related to typicality because, by demonstrating that Alpen House more likely than not caused the EHV outbreak, they have demonstrated that their interests align with the proposed class members' interests.[2]  The evidence produced thus far tends to show that Alpen House more likely than not caused the EHV outbreak by transporting infected horses from its Canadian facility to Monmouth Park.  (See dkt. entry no. 57-6, Named

---

[2] Alpen House argues that Named Plaintiffs' claims are atypical of the proposed class members' claims because Alpen House asserts affirmative defenses against Named Plaintiffs that, if proven, would tend to separate Named Plaintiffs' interests from those of the proposed class.  (See Answer to Second Am. Compl. at 8-10 (asserting, inter alia, that Named Plaintiffs actually caused the EHV outbreak).)  See also Schering Plough ERISA Litig., 589 F.3d at 599-601 (demonstrating that named plaintiff's claim is atypical of proposed class members' claims where unique defenses apply to named plaintiff).  At this stage of the proceedings, however, absent evidence of an "apparent" and "imminent" conflict between Named Plaintiffs and the proposed class members, Alpen House's argument fails.  See Suprema Specialties, 2007 WL 1217980, at *6; see also In re NASDAQ Mkt.-Makers Antitrust Litig., 169 F.R.D. 493, 513-15 (S.D.N.Y. 1996).

Plaintiffs' Answers to Interrogatories & Related Exhibits at 42; dkt. entry no. 60-2, Geiser Dep. at 33-34; dkt. entry no. 60-3, Osterrieder Report at 1-2, 4-6 (concluding, based upon review of records and deposition transcripts, that EHV outbreak originated at Alpen House's Canadian facility).)[3] Named Plaintiffs have also demonstrated that the nature of their claims, which are premised upon Alpen Houses's allegedly tortious acts, are typical of the claims that would be submitted by proposed class members. (See dkt. entry nos. 57-5 through 57-24 (detailing nature and extent of damages, as submitted by thoroughbred horse owners and trainers to the NJTHA).)[4]

**NAMED PLAINTIFFS** have also satisfied the final element of Rule 23(a), adequacy of representation. Rule 23(a)(4) "has two components designed to ensure that absentees' interests are fully pursued." Schering Plough Corp. ERISA Litig., 589 F.3d at 601 (citation omitted). It first tests the qualifications of the proposed class counsel to represent the class. Id. at 602. When approving class counsel, the Court must consider: (1) "the work

---

[3] Citations to specific pages in Named Plaintiffs' Answers to Interrogatories & Related Exhibits refer to the page number as docketed, i.e., the page number within the .pdf file docketed with the Clerk of the Court, rather than the page number actually printed on the bottom of each page.

[4] To the extent that NJTHA has already reimbursed class members for expenses that they might recover in this or a related action, NJTHA's claims are typical of those that would be submitted by proposed class members.

6

counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class". Fed.R.Civ.P. 23(g)(1)(A). Named Plaintiffs argue that the proposed class counsel, Michael D. Schottland, Esq. of Lomurro, Davison, Eastman & Muñoz, P.A., can and should represent the proposed class. (Br. at 26-28.) Upon review of the record, the Court finds that Attorney Schottland is adequately qualified to represent that class. Attorney Schottland has been "actively involved" in this matter since the EHV outbreak, and has committed and declared that he will continue to commit resources to this matter. (See dkt. entry no. 57-2, Schottland Cert. at ¶¶ 3-6.) Attorney Schottland has, furthermore, previously handled matters on behalf of and involving NJTHA, owners of thoroughbred horses, and trainers of thoroughbred horses. (Id. at ¶ 8.)[5]

**THE SECOND PRONG OF RULE 23(a)(4)** "seeks to uncover conflicts of interest between named parties and the class they seek to represent." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 532 (3d Cir. 2004). This inquiry overlaps with the

---

[5] We note that Alpen House does not oppose Attorney Schottland's appointment as class counsel.

typicality inquiry insofar as "certain questions--like whether a unique defense should defeat class certification--are relevant under both." Schering Plough Corp. ERISA Litig., 589 F.3d at 602. For the reasons expressed on pages 5-6 of this Opinion, the Court finds no evidence of record to suggest that Named Plaintiffs' interests conflict with the proposed class members' interests.

**NAMED PLAINTIFFS** nevertheless fail, however, to demonstrate by a preponderance of the evidence that their action is maintainable under the disjunctive requirements of Rule 23(b). Named Plaintiffs argue that the action is maintainable under either Rule 23(b)(1)(B) or Rule 23(b)(3). (Dkt. entry no. 57-1, Br. at 20-26.)

**NAMED PLAINTIFFS** have not satisfied Rule 23(b)(1)(B). Rule 23(b)(1)(B) only contemplates certification in situations where judgment in an individual litigant's "nonclass action", while not technically precluding other members from bringing suit, might do so as a practical matter. Fed.R.Civ.P. 23 advisory committee's note, 39 F.R.D. 69, 101 (1966). Subsection (b)(1)(B) is thus generally used to maintain class actions when a defendant maintains a "common fund" for damages and payment from the fund to some members of a class would preclude payment, in full or in part, to other members. See In re Human Tissue Prods. Liability Litig., No. 06-135, 2010 WL 743922, at *5 (D.N.J. Mar. 2, 2010);

PBA Local No. 38 v. Woodbridge Police Dep't, 134 F.R.D. 96, 103 (D.N.J. 1991) (denying certification under Rule 23(b)(1)(B) because named plaintiffs failed to produce evidence of a "'common fund' or anything akin thereto"). Because Named Plaintiffs have not produced evidence of a common fund or anything akin thereto in this matter, certification under Rule 23(b)(1)(B) is similarly inappropriate. See PBA Local No. 38, 134 F.R.D. at 103.

**NAMED PLAINTIFFS** have also failed to satisfy Rule 23(b)(3). Rule 23(b)(3) requires findings that: (1) common issues of law and fact predominate over issues affecting individual members; and (2) class litigation is superior to other methods of adjudication. Fed.R.Civ.P. 23; Hydrogen Peroxide Antitrust Litig., 552 F.3d at 310. Although the predominance inquiry contained in Rule 23(b) relates to and subsumes the commonality inquiry contained in Rule 23(a), the predominance inquiry is "far more demanding". Hydrogen Peroxide Antitrust Litig., 552 F.3d at 311. When considering whether common issues of law and fact predominate over issues relating only to individual members, the Court must consider the "nature of the evidence that will suffice to resolve [the] question". Id. (citation omitted). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." Id. (citation omitted).

**NAMED PLAINTIFFS**, as noted above, have raised claims against Alpen House for strict liability and negligence. (Id. at ¶¶ 22-27.) These claims share common elements; each claims requires Named Plaintiffs to prove (1) proximate cause, i.e., that Alpen House's conduct was the legal cause of Named Plaintiffs' damages; and (2) the nature and extent of such damages. Compare Cruz-Mendez v. ISU/Ins. Servs. of S.F., 722 A.2d 515, 524-26 (N.J. 1999) (recognizing proximate cause and damages as elements in strict liability actions) with Meier v. D'Ambose, 17 A.3d 271, 274 (N.J. App. Div. 2011) ("A common law cause of action has four elements", including "(3) proximate cause, and (4) actual damages.").

**THE COURT** has reviewed Named Plaintiffs' exhibits to "formulate some prediction as to how specific issues will play out[,] to determine whether common or individual issues predominate" in this case. See Hydrogen Peroxide Antitrust Litig., 552 F.3d at 311. Upon such review, the Court has determined that individual issues relating to both causation and damages predominate over common issues. As demonstrated by Named Plaintiffs' exhibits, each member of the proposed class suffered very different kinds and varying amounts of damage; as such, trying this case as a class action would still require individualized determinations as to causation and damages. (See, e.g., dkt. entry no. 57-16, Letter from Sunset Meadow Farms

(seeking damages for costs related to vaccinations and ongoing risk of "foal loss", i.e., miscarried foals, associated with horses stabled in Monmouth Park); dkt. entry no. 57-21, Letter from Freedom Acres, Inc. (seeking damages for, inter alia, approximate value of "lost purses", i.e., race winnings); dkt. entry no. 57-24, Letter from Clay Ranger (seeking damages for handling fees incurred while unable to race a Philadelphia-stabled horse at Monmouth Park).)

**THE COURT** will issue an appropriate Order.[6]

　　　　　　　　　　　　　　　　　s/ Mary L. Cooper
　　　　　　　　　　　　　　　　**MARY L. COOPER**
　　　　　　　　　　　　　　　　United States District Judge

Dated:    March 14, 2012

---

[6] Alpen House also argued that the Court should deny the Motion because Named Plaintiffs failed to adequately define the class. (See Opp'n Br. at 11-18.) Because the Court denies the Motion on other grounds, we have not addressed this argument.