```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| NEW JERSEY THOROUGHBRED HORSEMEN'S ASSOCIATION, INC.; ELR CORPORATION; DECKERT ENTERPRISES LLP #2; and TIMOTHY HILLS,<br><br>      Plaintiffs,<br><br>    v.<br><br>THE ALPEN HOUSE U.L.C.,<br><br>      Defendant. | HONORABLE JOSEPH E. IRENAS<br>CIVIL ACTION NO. 08-613<br>      (JEI/AMD)<br><br><br>**OPINION** |

**APPEARANCES:**

LOMURRO, DAVISON, EASTMAN & MUNOZ, P.A.
By:  Gary McLean, Esq.
     Peter Koenig, Esq.
100 Willowbrook Road, Building 1
Freehold, New Jersey 07728
          Counsel for Plaintiffs

ECKERT SEAMANS CHERIN & MELLOT, LLC
By:  Robert Zoller, Esq.
     Christopher Torkelson, Esq.
50 West State Street, Suite 1400
P.O. Box 1298
Trenton, New Jersey 08607
          Counsel for Defendant


**IRENAS**, Senior District Judge:

    Presently before the Court is Defendant's Motion for

Reconsideration, asking this Court to reconsider a portion of its

ruling denying Defendant's Motion for Summary Judgment.  For the

reasons states herein, the Motion for Reconsideration will be granted in part and denied in part.

### I.

The facts of this case are set forth in detail at *New Jersey Thoroughbred Horsemen's Association, Inc., et al. v. The Alpen House U.L.C.*, -- F. Supp. 2d -- , 2013 WL 1831883 (D.N.J. May 2, 2013). Neither Plaintiffs nor Defendant dispute the Court's recitation of the record evidence in that opinion.

### II.

Upon a motion for reconsideration, a decision "may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *see also* L. Civ. R. 7.1(i).

### III.

As noted previously, Defendant takes issue with a portion of

the Court's summary judgment decision.  First, it argues that the Court should have granted summary judgment on Plaintiffs' common law strict liability claim.  Second, it argues that the Court erred in holding that the New Jersey Thoroughbred Horsemen's Association (NJTHA) has associational standing to assert all of the claims of its individual members.  The Court addresses each issue in turn.

**A.**

Defendant first argues that the Court erred in concluding that issues of disputed material fact preclude summary judgment on Plaintiffs' common law strict liability claim.

As stated in the prior opinion, "Plaintiffs . . . argue that Defendant is strictly liable, under New Jersey common law, for shipping Spring Waltz and Morgenrot to Monmouth Park when it had suspicions that its facility harbored horses with the highly contagious, potentially lethal EHV-1 virus."  *New Jersey Thoroughbred Horsemen's Association*, 2013 WL 1831883 at *6.  The Court held that the record evidence, viewed in the light most favorable to Plaintiffs, could support the reasonable inference that Defendant should have known that Spring Waltz and Morgenrot could carry EHV-1 to Monmouth Park.  *Id.*  In particular, the Court explained that the record evidence showed that "[i]n the

3

six days prior to shipping Morgenrot and Spring Waltz, Defendant tested 14 of its horses for EHV-1 and three of its horses exhibited symptoms that were consistent with EHV-1." *Id.*

Defendant argues that the record evidence cannot support a conclusion that it should have known that the horses could carry EHV-1 to Monmouth Park.

First, Defendant makes a timing argument. It argues that the undisputed evidence shows that the 14 horses were not tested until *after* Spring Waltz and Morgenrot were sent to Monmouth Park, and therefore that evidence cannot logically support a conclusion that it should have known of the EHV-1 risk before transport.

The flaw in Defendant's argument is that the evidence *is* disputed. As noted in the previous opinion, the medical records for each of the 14 horses state that the horses were tested on October 6, 2006-- six days *before* sending Spring Waltz and Morgenrot to Monmouth Park. *New Jersey Thoroughbred Horsemen's Association*, 2013 WL 1831883 at *1. While Defendant submits testimony that the October 6th date is erroneous, and that the tests actually occurred on October 25th, *see Id.* at *1 n.5, the medical records themselves are internally consistent; nothing about the records on their face discloses any obvious error. Rather, Defendant contends that the erroneous date resulted from

4

an extrinsic data entry error.

Defendant argues that Plaintiffs have no evidence that calls into question their contention that the October 6th date is an error, but Defendant ignores the simple fact that the medical records themselves, which were apparently kept in the normal course of business, bear the date of October 6th. This evidence alone is sufficient to raise a material fact issue for resolution by a jury. Plaintiff should have the opportunity to argue to the jury-- as it has in opposition to the instant motion-- that the tests actually did occur on October 6th because it is simply implausible that the identical data entry error occurred 14 separate times on 14 separate medical charts. Defendant's timing argument fails.

Second, Defendant argues that even if the tests did take place on October 6th, the fact that all 14 horses tested negative for EHV-1 precludes any conclusion that it should have suspected an EHV-1 infection prior to sending Spring Waltz and Morgenrot to Monmouth Park. According to Defendant, once all of the horses tested negative for EVH-1, any suspicion of infection was conclusively dispelled.

This argument is flawed because it ignores the evidence that three horses at Adena Springs North (two of which were never tested) exhibited actual symptoms consistent with EHV-1 prior to

5

Spring Waltz's and Morgenrot's transport.  The undisputed record evidence shows that EHV-1 can be transmitted through contact with feed and equipment, not just exposure to infected horses.  *New Jersey Thoroughbred Horsemen's Association*, 2013 WL 1831883 at *1.  Indeed, the highly contagious nature of EHV-1 is the reason why biosecurity measures-- including disinfecting equipment and quarantining apparently healthy horses-- were undertaken at Monmouth Park.  *See id.*

Moreover, even Defendant implicitly admits in its argument that EHV-1 testing can only detect *active* EHV-1 infections.  *See* Reply Brief, p. 2 (emphasizing that the "supposed tests . . . ***showed no active infection***.") (italics, underline, and bold in the brief).[1]  However, the record evidence demonstrates that the incubation period for EHV-1 "'is typically 2-10 days.'"  *New Jersey Thoroughbred Horsemen's Association*, 2013 WL 1831883 at *1 (quoting New Jersey Department of Agriculture's memorandum concerning EHV-1).  Thus, the fact that all 14 tests yielded negative results on October 6th does not necessarily rule out the possibility that Spring Waltz or Morgenrot could have carried EHV-1 to Monmouth Park on October 12th, and that Defendant should have been aware of the potential for spreading the virus.

---

[1]  The Court has read and considered Defendant's reply brief even though Local Civil Rule 7.1(d)(3) provides that no reply papers shall be filed relating to motions for reconsideration.

6

Simply put, when the record evidence is considered as a whole, the undisputed fact that all 14 horses tested negative for EHV-1 may not be as significant as Defendant contends. A jury should weigh the significance of this fact in light of all of the evidence presented at trial.

Accordingly, the Court concludes that it did not clearly err in denying Defendant's summary judgment motion as to the common law strict liability claim. The Motion for Reconsideration will be denied as to that claim.

**B.**

Defendant also argues that this Court clearly erred with respect to a portion of its holding concerning NJTHA's associational standing to assert the claims of its individual members.

As stated in the previous opinion, NJTHA seeks three different categories of money damages resulting from the quarantine: (1) recovery of race purses its members lost when their horses could not race; (2) money lost as a result of a decreased betting handle; and (3) reimbursement of payments made out of the Emergency Fund.[2]  *New Jersey Thoroughbred Horsemen's*

---

[2] As explained in the prior opinion, owners and trainers submitted claims to the Emergency Fund for lost purses but the Fund Administrator rejected those claims. *New Jersey*

7

*Association*, 2013 WL 1831883 at *10. While Defendant states that it disagrees with the Court's holding that NJTHA has associational standing to seek recovery of (2) and (3), it does not challenge that holding in the instant motion. (Moving Brief, p. 9; Reply Brief, p. 3, 4) It only challenges the Court's conclusion that NJTHA has associational standing to assert its members' claims to the money damages identified in (1).[3]

Specifically, the Court rejected Defendant's argument that proof of (1) would "require proving individualized damages through the use of individualized proof" and therefore NJTHA failed to establish the third prong of the *Warth* test for associational standing. *New Jersey Thoroughbred Horsemen's Association*, 2013 WL 1831883 at *10.[4] Defendant claims that proving (1) will require individualized proof as to each member, and therefore the Court clearly erred.

The Court agrees that individualized proof will be

---

*Thoroughbred Horsemen's Association*, 2013 WL 1831883 at *3. Thus, lost purse money was not included in the compensation claimants received from the Emergency Fund.

[3] Defendant also does not ask this Court to reconsider its holding that NJTHA has standing in its own right to pursue its own claim for damages against Defendant. *See New Jersey Thoroughbred Horsemen's Association*, 2013 WL 1831883 at *9-*10.

[4] As stated in the previous opinion, Defendant only contests the third prong of the three-pronged test. *New Jersey Thoroughbred Horsemen's Association*, 2013 WL 1831883 at *10.

necessary. Indeed, this conclusion was implicit in the Court's explanation of why Plaintiffs' damages claims were not speculative. By concluding that racing histories for individual horses could "assist the jury in making a reasonable prediction on how a given horse would have performed or how much money they would have won in a given race," *New Jersey Thoroughbred Horsemen's Association*, 2013 WL 1831883 at *7, the Court anticipated that individual members would put on proofs concerning individual horses' performances. Moreover, Plaintiffs' portion of the Final Pretrial Order bears this out: Plaintiffs plan to call as trial witnesses all 29 individual owners and trainers who submitted claims to the Emergency Fund, including claims for lost purses.

The Court also concludes that it erred in its alternate holding that the associational standing issue was mooted by the 29 claimants' assignment to NJTHA of their legal claims against Defendant. The Court raised the assignment issue based on the assignments which were part of the summary judgment record, *see New Jersey Thoroughbred Horsemen's Association*, 2013 WL 1831883 at *11, even though NJTHA did not rely on those assignments in opposition to summary judgment. Defendant asserts that NJTHA did not raise the issue because pre-judgment assignment of tort claims are invalid under New Jersey law. *See generally East*

9

*Orange Lumber Co. v. Christian Feiganspan*, 120 N.J.L. 410 (Sup. Ct. 1938). In opposition to the instant motion, NJTHA all but concedes this point.

The Court concludes that the assignments are invalid under New Jersey law, therefore they cannot provide standing to NJTHA in this suit. *See New Jersey Thoroughbred Horsemen's Association*, 2013 WL 1831883 at *11, ("'Many cases reflect the premise that a *valid* assignment confers upon the assignee standing to sue in place of the assignor.'") (italics added).

The Motion for Reconsideration will be granted as to the issue of NJTHA's standing to assert claims for lost purse moneys on behalf of its individual members. Accordingly, the Court holds that NJTHA lacks standing to assert claims for damages in the form of lost purse moneys.

**IV**.

For the foregoing reasons, Defendant's Motion for Reconsideration will granted as to the issue of NJTHA's standing to assert claims for lost purse moneys on behalf of its individual members, and denied in all other respects. An appropriate Order accompanies this Opinion.

September 12, 2013                       s/ Joseph E. Irenas
                                                  Joseph E. Irenas, S.U.S.D.J.